Benjamin W. **BROWNLOW**,
Plaintiff–Appellee,

v.

**EDGECOMB METALS COMPANY**,
Defendant–Appellant.

No. 87–4142.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 2, 1988.

Decided Feb. 13, 1989.

Rehearing Denied March 13, 1989.

See also, D.C., 573 F.Supp. 679.

Michael T. McMenamin (argued), Nancy A. Noall, Walter, Haverfield, Buescher & Chockley, Michael P. Harvey, Cleveland, Ohio, for defendant-appellant.

Malcolm C. Douglas (argued), Cleveland, Ohio, for plaintiff-appellee.

Before KENNEDY, GUY and RYAN, Circuit Judges.

RYAN, Circuit Judge.

Defendant appeals a non-jury verdict in favor of plaintiff for violation of his rights under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C.A. § 621 *et seq.* (1985 and Supp.1988). Because we conclude the district court's central findings of fact are clearly erroneous, we reverse.

## I.

### A.

Plaintiff Benjamin Brownlow was employed by defendant Edgecomb Metals Company as the department manager for inside sales of stainless steel and aluminum products at defendant's Cleveland Service Center from November 20, 1978 to February 10, 1982. On February 10, 1982, Ray Larsen, the general manager of Edgecomb's Cleveland facility, discharged plaintiff from his position with Edgecomb. Brownlow was fifty-five years of age at the time. Larsen told Brownlow his termination was the result of economic necessity, and was unrelated to plaintiff's job performance.

At the time of plaintiff's termination, the Cleveland Service Center had been incurring major economic losses. They had lost $907,000.00 in 1980 and $534,000.00 in 1981. Ray Larsen became general manager of the Cleveland facility at the beginning of 1982. At that time, Harold Beasley was the sales manager, and the inside sales staff included four department managers: (1) Bill Minnick, general line products, age 29; (2) Tom Baltakis, carbon flatroll products, age 34; (3) plaintiff, stainless steel and aluminum products, age 55; and (4) R.E. Wood, hot-roll plate products and work orders, age 34. Of the four, plaintiff was the most senior in years of service and the oldest.

Prior to terminating plaintiff, Ray Larsen had several conversations with Harold Beasley, the sales manager. Larsen informed Beasley that he planned to terminate plaintiff, and Beasley objected strenuously. However, Larsen never discussed his plans with the controller of the Cleveland facility, Jerome Jarzynka. Moreover, Larsen never indicated to Beasley or Jarzynka that his termination of Brownlow was part of an overall reorganization or reduction in force plan. The only other employee discharged at the same time as Brownlow was Sherry Motil, a personnel representative who was responsible for the Cleveland Service Center's compliance with EEOC guidelines.

The responsibilities of the department managers included the supervision of inside sales representatives in their product line areas, controlling and administering inventory in their product line areas, and functioning as the senior inside sales person in their area. Subsequent to plaintiff's termination, the functions which he had previously performed were initially assigned to Larsen, who undertook the inventory and supervisory functions, and to Susan Weinke and Dale DeWalt, who took over plaintiff's outside sales accounts. In May 1982, Larsen hired Michael Prokop, age 36, as inside sales manager. Prokop was given the supervisory duties previously performed by plaintiff.

Bill Minnick resigned as department manager for general line products in April 1982. Tom Baltakis resigned as department manager for carbon flatroll products on May 28, 1982. There was some evidence in the record indicating that Minnick and Baltakis resigned because they feared that Larsen would terminate them. R.E. Wood, department manager for hot-roll plate products, was discharged for unsatisfactory work performance in November 1982. In September 1982, Edgecomb closed down operations in Detroit and Pittsburgh and consolidated them with the Cleveland Service Center. At least partially because of this consolidation, seven new sales positions were established within the Cleveland operation after Brownlow's termination.

In the middle of 1983, Edgecomb created the position of Product Specialist for each of the four departments within the inside sales area of the Cleveland Service Center. The Products Specialists for each department were given the sales and inventory functions of the department manager position which plaintiff had held, but not the supervisory functions. In 1984, the Products Specialists resumed the title of Department Manager.

At trial, Ray Larsen testified that he terminated Brownlow pursuant to a reorganization or reduction in force plan which he had developed. This plan called for the elimination of the four department manag-

ers as a means of reducing cost at the Cleveland Service Center. Larsen stated that the plan was not written, nor did it have any set timetable. Larsen offered three reasons for his decision to terminate plaintiff first: (1) he (Larsen) was more comfortable with aluminum and stainless steel than with the other product line areas because most of his experience had been in aluminum and stainless steel; (2) plaintiff was responsible for supervising only two other employees, and Larsen did not believe such a small number of employees needed supervising; and (3) he did not believe that Edgecomb had a bright future in aluminum in Cleveland.

### B.

After a three-day bench trial, the district court issued an opinion granting judgment to plaintiff. The district court held that the plaintiff had succeeded in presenting a *prima facie* case under ADEA by demonstrating that he was in the protected age group, that he was discharged, that he was qualified for his position, and that he was replaced by a younger person. The court held that the fourth element, a showing that plaintiff was replaced by a younger person, was satisfied because plaintiff's position was not eliminated. The district court further held that the fourth element "is excused where employees are allegedly terminated pursuant to a reduction in force...." In such cases, the district court held the plaintiff must come forward with additional direct, circumstantial, or statistical evidence demonstrating that age was a factor in his termination. The court found that even if plaintiff had not demonstrated the fourth element, he nevertheless established a *prima facie* case by presenting "additional evidence" showing that the alleged reduction in force was a sham. Having found that the plaintiff had established a *prima facie* case, the court shifted the burden of production to defendant to articulate a legitimate reason for plaintiff's discharge. The court held that defendant met its burden by alleging that plaintiff's termination was part of a reduction in force plan designed to eliminate cost and end the operating losses which were then prevalent at the Cleveland facility.

The court then shifted the burden back to plaintiff to prove that defendant's proffered reasons were pretextual. The court listed six reasons in support of its conclusion that plaintiff had met this burden. "First, plaintiff showed that only he and one minor clerical employee were terminated pursuant to the alleged reduction in force. Any savings from the two discharges was absorbed by the expense of the subsequent hires." "Second, the proferred [sic] reduction in force was never put in writing at any step in its implementation." Third, the district court found that aluminum sales had increased exponentially during plaintiff's tenure as department manager. The court found that this mitigated against defendant's argument that the decrease in stainless steel sales and a "dim" future in the aluminum market led to the decision to discharge plaintiff instead of any of the other department managers. Fourth, the district court discounted defendant's assertion that plaintiff, rather than the other department managers, should be terminated first under Larsen's plan because Larsen had comparable experience in aluminum and stainless steel:

> However, new employees were hired to take over plaintiff's duties, inevitably resulting in the reestablishment of plaintiff's duties in the single position of product specialist and the title later reverted to Department Manager. Plaintiff was replaced: his position was not eliminated. Similarly, defendant argued that plaintiff was discharged because he supervised only two persons. However, defendant continued to employ a Department Manager who supervised only one part-time employee and the other remaining Department Managers supervised only three and four employees respectively.

Fifth, "defendant's failure to transfer plaintiff to another position or rehire him is evidence of pretext in light of the different treatment of Mr. Woods [sic] and evidence that no meaningful reduction in force occurred." "Sixth, in discharging plaintiff and advertising for new hires, defendant did not follow any of the versions of its

equal employment opportunity compliance policy proffered at trial. The failure to conform to its own policies is evidence of pretext."

After determining that Edgecomb was liable under ADEA, the district court held that an award of front pay was appropriate in this case because plaintiff was fifty-five years old at the time of his discharge. The court rejected defendant's argument that plaintiff's unemployment compensation benefits and his workmen's compensation benefits should be deducted from his back-pay award because the "collateral source" rule provides that defendant may not benefit from payments to the plaintiff from third parties. Finally, the district court rejected defendant's argument that plaintiff should not be awarded fringe benefits, such as insurance premiums, where plaintiff had not purchased alternative coverage or otherwise incurred reimbursable expenses. The court awarded plaintiff $159,992.00 in backpay and $199,766.00 for the loss of compensation from the date of the trial to the end of his work life.

## II.

■ Edgecomb argues that the district court erred in finding that plaintiff established a *prima facie* case of age discrimination. We need not directly address this argument because it is now firmly established in this circuit that when a case has been tried on the merits, a reviewing appellate court need not address the sufficiency of plaintiff's *prima facie* case, and may instead proceed directly to the ultimate question whether plaintiff has established discrimination.

> Since this case proceeded to trial on the merits and resulted in a jury verdict for Simpson, we appropriately address whether Simpson met his ultimate burden of persuasion regarding his age discrimination claim. At least twice our court has chosen to pass over the sufficiency of plaintiff's initial showing and has directly considered the merits of plaintiff's claim. *Ridenour v. Lawson Co.*, 791 F.2d 52, 57–58 (6th Cir.1986); *Wilkins v. Eaton Corp.*, 790 F.2d 515,

523 (6th Cir.1986).... See also *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983), which found that the court of appeals had unnecessarily evaded the ultimate question of discrimination by framing the issue as whether plaintiff made out a prima facie case even though the case was fully tried on the merits.

*Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 942 (6th Cir.1987).

"The ultimate issue in this age discrimination suit is whether age was a determining factor in the employer's decision to fire the plaintiff." *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1180 (6th Cir.1983); *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir.1975). This is quintessentially a question of fact. In this case, the district court, as the finder of fact, concluded that plaintiff's age was a factor in the decision to terminate him. Therefore, in order to prevail on appeal, defendant must establish that the district court's finding was "clearly erroneous." Fed.R.Civ.P. 52(a); *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511–12. In reviewing age discrimination cases, the Sixth Circuit has consistently taken a case-by-case approach. *Simpson,* 823 F.2d at 940–41; *LaGrant v. Gulf & Western Mfg. Co., Inc.,* 748 F.2d 1087, 1090 (6th Cir.1984); *Blackwell,* 696 F.2d at 1179; *Laugesen,* 510 F.2d at 312–13.

### III.

▪ Defendant's central argument on this appeal is that the district court erred in concluding that the legitimate business reasons which Edgecomb articulated for terminating plaintiff were pretextual. The linchpin of Edgecomb's position is its contention that Ray Larsen had developed and was applying a reduction of workforce plan which called for the elimination of the department manager layer of management at the Cleveland Service Center. As noted above, the district court cited six different reasons in support of its factual conclusion that defendant was not implementing a legitimate reduction in workforce. Close examination of those reasons leaves us " 'with the definite and firm conviction that a mistake has been committed.' " *Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511 (citation omitted).

The district court placed the most emphasis on its first reason for concluding that Edgecomb did not implement a reduction in force: the fact that only plaintiff and a minor clerical worker were terminated. We fail to see the significance of this point because the fact remains that all four inside sales managers were eliminated. It does not matter that Edgecomb did not terminate Minnick and Baltakis but rather permitted, or perhaps induced, them to resign. Indeed, there is evidence in the record indicating that, from a business point of view, the best way to implement a reduction in force is to induce as many employees as possible to voluntarily resign. Employers are simply not required to implement reductions in force by discharging every employee whom management wishes to eliminate.

Next, the district court relied upon the absence of written evidence indicating that Edgecomb was in fact pursuing a reorganization. The district court ignored Edgecomb's 1981 five-year operating plan which called for close monitoring of manning levels in sales in order to reduce costs and a restructuring of "the Outside and Inside sales force both in numbers and in territory covered...." The district court conceded that Edgecomb had no legal duty to reduce its plan to writing, but nevertheless found the absence of writing indicative of pretext. We disagree. Edgecomb presented expert testimony which demonstrated that reduction in force plans are not generally reduced to writing in order to reduce the risk of premature release of such potentially controversial management decisions. In light of this evidence, the absence of writing is fully consistent with Edgecomb's proffered business reason for plaintiff's termination.

The remainder of the district court's reasons in support of its conclusion that the reduction in force was pretextual are essentially disagreements with Edgecomb's business judgment. The district court disputed Edgecomb's assertion that stainless steel sales had decreased, disagreed with Edgecomb's decision to permanently discharge plaintiff rather than merely laying him off, and rejected Edgecomb's claim that plaintiff was selected for termination before the other inside sales managers because of Larsen's previous experience in aluminum. All of these disagreements with the soundness of Edgecomb's business judgment are beyond the scope of the factfinder. *Wilkins v. Eaton Corp.,* 790 F.2d 515, 521, *reh'g denied,* 797 F.2d 342 (6th Cir.1986).

▪ Finally, the district court pointed to defendant's failure to comply with EEOC guidelines in advertising for new employees after the consolidation of the Cleveland facility with Pittsburgh and Detroit. While defendant's failure to include the legend "An Equal Opportunity Employer" in its advertisements may be marginal circumstantial evidence of an insensitivity to equal opportunity policies, it hardly constitutes evidence that Edgecomb's reduction

in force plan was a pretext for age discrimination.

Although the district court did not specifically cite it as a reason supporting its conclusion of pretext, the court did appear to place great weight on its impression that the inside sales positions were not eliminated, but merely renamed as product specialists. We find this conclusion to be clearly erroneous for two reasons. First, the product specialists did not have the supervisory functions of the inside sales managers; thus, the positions were not identical. More importantly, the product specialist positions were not established until 1983, *after* the consolidation with Pittsburgh and Detroit. Thus, the employees hired as product specialists were responsible for the work previously done by the inside sales department managers in Cleveland, Detroit, and Pittsburgh. There really *was* a reduction in force.

When an employee is discharged pursuant to a reduction in force plan, he may not recover under ADEA unless he demonstrates that age was a determining factor in the decision to discharge him. *See Chappell v. GTE Products Corp.*, 803 F.2d 261, 266 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). Plaintiff presented no direct evidence whatever that age had anything to do with his termination. Further, he presented no circumstantial evidence, other than the fact that he was the oldest inside sales department manager, linking the discharge decision to his age. At most, plaintiff produced circumstantial evidence of Edgecomb's improper consideration of age with regard to *other* employees. But none of the incidents which plaintiff presented involved Ray Larsen, the Edgecomb executive who made the decision to terminate plaintiff. Thus, plaintiff's showing does not, by any stretch of the imagination, demonstrate by a preponderance of the evidence that age was a determining factor in plaintiff's discharge.

We are not unmindful of the peril which an appellate court encounters when it overturns findings of fact made by the trial court. But we cannot abdicate our responsibility to reverse factual conclusions when we are firmly convinced that the district court has erred. Our review of the record in this case leaves us with the definite conviction that plaintiff was not discharged as a result of his age. For this reason, the judgment of the district court is REVERSED, and the case is REMANDED with instruction that judgment be entered for defendant.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

The majority states that the determinative issue in this appeal is "quintessentially a question of fact." I agree. However, I do not believe that the record supports a conclusion that the district judge was clearly erroneous in his findings of fact. The majority decides this case in a plausible manner and reaches a result for which there is evidentiary support. In doing so, however, I believe they have substituted their judgment for that of the district court. I would affirm.

In the course of affirmance, I would look closely at the damages awarded. The plaintiff appears to have emerged from all of this better off financially than if he had been retained. Perhaps this is at least a partial, if unspoken, reason for the reversal.