887 F.2d 1086
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Von FLETCHER, Plaintiff-Appellant,
v.
DANA CORPORATION, Defendant-Appellee.
 No. 89-1029.
 United States Court of Appeals, Sixth Circuit.
 Oct. 23, 1989.
 
 Before KEITH, MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Von Fletcher ("Fletcher") appeals the district court's award of summary judgment for defendant-appellee Dana Corporation ("Dana") in this wrongful discharge diversity action. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On April 4, 1988, Fletcher commenced the present action in the Washtenaw County, Michigan, Circuit Court, alleging that Dana discharged him without good cause in violation of an express or implied employment contract pursuant to Toussaint v. Blue Cross & Blue Shield, 408 Mich. 579, 292 N.W.2d 880 (1980). On April 22, 1988, Dana removed this action to the district court on the basis of diversity of citizenship.
 
 
 3
 On September 30, 1988, Dana filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. On December 1, 1988, the district court heard oral arguments and granted Dana's motion, ruling there was no question of fact presented because Fletcher's discharge was based upon a legitimate business decision for a reduction in the work force. This timely appeal followed.
 
 B.
 
 4
 Plaintiff-appellant Fletcher was hired in 1967 as an hourly employee at Dana's Chelsea, Michigan, facility in a position represented by the United Auto Workers Union. In 1976, he was promoted to production foreman, a management position for which the protections afforded by the collective bargaining agreement between the union and Dana were no longer applicable. At the time of Fletcher's promotion, Dana employed 270 hourly employees at the Chelsea facility. By 1980, Dana was in the process of reducing its work force at the Chelsea facility in response to a business downturn. Dana moved a portion of its manufacturing operations to Arkansas in 1982, and its entire assembly operation to Mississippi in 1983, causing further reductions in the work force. On March 20, 1987, William Wright, Fletcher's supervisor, told Fletcher that he would be permanently laid off, on the basis of seniority, because of a reduction in the work force. By the end of 1987, the work force at the Chelsea facility was reduced to 123 hourly employees.
 
 
 5
 Fletcher bases his Toussaint claim upon representations made to him by Plant Superintendent Ken Kuzon at the time Fletcher was promoted to production foreman. Fletcher testified in his deposition that Kuzon told him that as long as he did his job and did it well, he would have no problems because Dana took care of their management employees. Fletcher asserts that Kuzon's representations created an express or implied contract of employment under which he could be discharged only for just cause. For purposes of this appeal, it may be assumed that Fletcher established a Toussaint employment contract. The issue presented in this appeal is whether there was "just cause" for Fletcher's discharge.
 
 II.
 
 6
 Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. A district court's grant of summary judgment is reviewed de novo. Pinney Dock and Transport Co. v. Pennsylvania Central Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 109 S.Ct. 196 (1988). In its review, this court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 
 7
 The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, in responding to a summary judgment motion, the nonmoving party cannot rest on its pleadings but must present some "specific facts showing that there is a genuine issue for trial." Id. at 324 (quoting Fed.R.Civ.P. 56(e)).
 
 
 8
 "By its very terms, the standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. "If the evidence is merely colorable[,] or is not significantly probative[,] summary judgment may be granted." Id. at 249-50 (citations omitted). Furthermore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 575, 587 (1986).
 
 
 9
 The present action is governed by the Michigan Supreme Court's ruling in Toussaint v. Blue Cross & Blue Shield, 408 Mich. 579, 292 N.W.2d 880 (1980), and its progeny. In Toussaint, the court held that "an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." Id., 408 Mich. at ----, 292 N.W.2d at 890.
 
 
 10
 In the present case, there is a dispute as to the "true reason" Dana discharged Fletcher. Fletcher argues he was discharged because of a personality conflict with his immediate superior, William Wright. Dana asserts that Fletcher was discharged in compliance with company policy on the basis of a business decision to reduce the number of supervisory employees. Fletcher concedes that he is not questioning Dana's business judgment; rather, he asserts the stated reasons for his termination are a subterfuge.
 
 In Toussaint, the court held:
 
 11
 Where the employer alleges that the employee was discharged for one reason--excessive tardiness--and the employee presents evidence that he was really discharged for another reason--because he was making too much money in commissions--the question also is one of fact for the jury. The jury is always permitted to determine the employer's true reason for discharging the employee.
 
 
 12
 Toussaint, 408 Mich. at ----, 292 N.W.2d at 896. Thus, ordinarily a jury question is presented when there is a dispute as to the "true reason" for discharging the employee. However, to reach the jury, Toussaint requires the employee to present "evidence that he was really discharged for another reason." Id. (emphasis added). With a motion for summary judgment, the defendant-employer tests whether the employee has presented sufficient evidence to raise a question for the jury.
 
 
 13
 To support his assertion that he was not fired for "just cause," Fletcher submitted evidence that there was animosity between himself and Wright. In his deposition, Wright conceded that he had arguments with Fletcher concerning management philosophy and style prior to becoming Fletcher's immediate superior. Fletcher further asserted there was animosity between the two men because he replaced Wright as lead foreman in 1985, when Wright was laid off. In January 1987, Wright was promoted to the position of area manager, becoming Fletcher's immediate superior, and on March 20, 1987, Wright informed Fletcher that he would be permanently laid off. Fletcher contends that from the history of animosity between Wright and him, an inference can be drawn that his discharge was not for a just cause.
 
 
 14
 Fletcher buttresses his argument by questioning the legitimacy of Dana's explanation for his discharge. First, Fletcher asserts that he was the only employee permanently discharged on March 20, 1987, and since that date, Dana has increased the number of hourly employees on the second and third shifts. Second, Fletcher disputes the existence of a Dana policy requiring each foreman to supervise between thirty-five and fifty hourly employees. Finally, Fletcher argues he was denied the opportunity to bump less senior management employees. Fletcher asserts that the foregoing factors are evidence that Dana did not discharge him for legitimate business reasons.
 
 
 15
 In support of its motion for summary judgment, Dana presented evidence that Fletcher's discharge was based on a management decision to eliminate one production foreman position. Dana asserts that Fletcher was selected for discharge because he had the lowest seniority within the job classification. Dana's Human Resources Administrator, Dawn Champanois, stated in her affidavit that it was company policy for a foreman to supervise between thirty-five and fifty hourly employees. The elimination of Fletcher's position on the first shift brought the foreman/hourly employee ratio into compliance with company guidelines. Following Fletcher's termination, the number of hourly employees at the Chelsea facility increased due to additional manpower on the second and third shifts. However, no additional production foremen were hired, and Fletcher's former position has not been re-created or filled.
 
 
 16
 Reviewing the evidence presented in light of the summary judgment standards announced in Anderson, Celotex, and Matsushita, we conclude the district court properly granted summary judgment in this case. Fletcher failed to offer sufficient evidence to create a genuine issue of material fact as to the reason for his discharge. Celotex, 477 U.S. at 324. Furthermore, Fletcher did not offer "significantly probative" evidence that he was discharged for any reason other than that offered by Dana. Anderson, 477 U.S. at 249-50. Specifically, Fletcher did not produce sufficient evidence from which a jury could reasonably find that he was discharged because of a personality conflict with Wright. Id. at 252. To accept Fletcher's theory for why he was discharged, one would have to conclude that Wright, because he disliked Fletcher, persuaded Dana management to establish a foreman/hourly employee ratio, to eliminate Fletcher's position, and to elect not to replace Fletcher. Viewing the evidence of animosity between Fletcher and Wright in the light most favorable to Fletcher, it is insufficient to create an issue for trial because "the record taken as a whole could not lead a rational trier of fact to find for" Fletcher. Matsushita, 475 U.S. at 587.
 
 
 17
 The evidence presented by Fletcher to buttress his argument does not support his assertion that he was fired because of a personality conflict with Wright. Rather, Fletcher's buttressing evidence challenges the legitimacy of Dana's explanation for his discharge, and this evidence similarly fails to create a genuine issue of material fact.
 
 
 18
 The fact that Dana increased the number of hourly employees after Fletcher's discharge does not contradict the evidence that Fletcher's former position has not been recreated or filled. Fletcher supported his assertion that the foreman/hourly employee ratio was not Dana policy with affidavits of two retired Dana management employees. Both employees stated that there was no foreman/hourly employee ratio when they were employed in Dana's personnel department; however, they last served in Dana's personnel department more than one year prior to the date of Fletcher's discharge. The retired employees' affidavits do not contradict Dana's assertion that the ratio policy was in effect when Fletcher was discharged. Finally, Fletcher asserts he was denied the opportunity to bump less senior management employees in different departments. Fletcher has cited two occasions on which demoted management employees bumped less senior management employees in different departments. However, Fletcher's evidence does not contradict Dana's assertion that company policy allowed bumping only within job categories at the time Fletcher was discharged. Furthermore, Dana asserts that Fletcher was not qualified for the job classifications into which he sought to "bump", and Dana's conclusion as to Fletcher's qualifications is the type of business decision which we have said is "beyond the scope of the factfinder." Brownlow v. Edgecomb Metals Co., 867 F.2d 960, 964 (6th Cir.1989).
 
 
 19
 Boynton v. TRW, Inc., 858 F.2d 1178 (6th Cir.1988) (en banc), also supports the grant of summary judgment in this case. Boynton is distinguishable from the present case in that there was no dispute that the "true reason" for Boynton's layoff was adverse economic circumstances. Thus, the issue in Boynton was whether the discharge of a "just cause" employee because of an economically mandated reduction in force is subject to judicial review under Toussaint. Id. at 1179. We held that it was not and stated, "[W]e find no support for the proposition that the soundness of a management decision to effect a reduction in force solely by reason of adverse economic circumstances is also subject to jury review." Id. at 1184. In that regard, we noted "that as a matter of law, plaintiff's discharge for economic reasons, as determined by and within the complete discretion of the board of directors of defendant corporation, constitutes termination for sufficient cause." Id. (quoting Friske v. Jasinski Bldrs., Inc., 156 Mich.App. 468, 472-73, 402 N.W.2d 42, 44 (1986), appeal denied, 428 Mich. 880 (1987)).
 
 
 20
 Our holding in Boynton is applicable to the present case because, although Fletcher did not concede his discharge was the result of an economically mandated reduction in force, he has failed to present sufficient evidence that his discharge was for any reason other than an economically motivated business decision by Dana. Having failed to submit sufficient evidence that he was discharged due to a personality conflict, Fletcher is left with allegations questioning the legitimacy of Dana's business decision to discharge him. In Boynton, we held that "to the extent Boynton's claim challenges the 'justness' of TRW's economically motivated decision to eliminate his sales position, a position left unfilled, TRW is entitled to a judgment as a matter of law." Id. at 1184. Similarly, Dana is entitled to summary judgment in this case.
 
 III.
 
 21
 For the reasons stated, the summary judgment of the district court is AFFIRMED.