**EQUAL EMPLOYMENT OPPORTU-NITY COMMISSION, Plaintiff–Appellant (95–3060),**

**Ronald W. Willis, Plaintiff–Intervenor–Appellant (94–4320),**

**v.**

**AVERY DENNISON CORPORATION, d/b/a Avery Label Systems, Defendant–Appellee.**

**Nos. 94–4320, 95–3060.**

United States Court of Appeals, Sixth Circuit.

Argued May 7, 1996

Decided Jan. 17, 1997.

Robert J. Gregory (argued and briefed), Office of General Counsel, Washington, DC, for Plaintiff–Appellant in No. 94–4320.

Joseph W. Diemert, Jr. (briefed), Laura J. Gentilcore, Joseph W. Diemert, Jr. & Assoc., Cleveland, OH, for Plaintiff–Intervenor–Appellant in No. 94–4320.

Mark E. Staib (argued), Amy Berman Hamilton, Hahn, Loeser & Parks, Cleveland, OH, for Defendant–Appellee in No. 94–4320.

Robert J. Gregory (argued and briefed), Office of the General Counsel, Washington, DC, Sophia C. Goodman (briefed), Equal Employment Opportunity Commission, Washington, DC, for Plaintiff–Appellant in No. 95–3060.

Mark E. Staib (argued), Amy Berman Hamilton, Mark D. Griffin (briefed), Hahn, Loeser & Parks, Cleveland, OH, for Defendant–Appellee in No. 95–3060.

Before: MARTIN, Chief Judge, and JONES and RYAN, Circuit Judges.

JONES, J., delivered the opinion of the court, in which MARTIN, C.J., joined. RYAN J. (pp. 863–867), delivered a separate dissenting opinion.

NATHANIEL R. JONES, Circuit Judge.

In this retaliatory discrimination case, Plaintiffs filed motions for summary judgment, claiming *inter alia* that they had met their *prima facie* burden. Defendant, in its response, directly countered that assertion. The district court denied Plaintiffs' motions without definitively ruling on the *prima facie* question and proceeded to trial. After a four day bench trial during which testimony on all issues was received, the district court ruled that Plaintiffs had failed to establish a *prima facie* case of retaliation, and therefore, entered judgment for the Defendant. For the reasons that follow, this was error. We therefore reverse the judgment of the district court.

## I.

Plaintiff–Intervenor Ronald W. Willis ("Willis"), an African–American male, was employed by Defendant Avery Dennison, Inc. ("Avery"), from 1977 until 1990 at one of Avery's plants located in Cleveland, Ohio. In 1982, Willis filed an Equal Employment Opportunity Commission ("EEOC") complaint asserting that he was laid off and that his job was threatened after reinstatement, because of his race and in retaliation for having protested Title VII violations and company policies of not hiring minorities. This charge was settled in July, 1983, when Avery awarded Willis back pay.

In 1983, Willis applied for a foreman position, but the position was given to Ronald Gainer (a caucasian male). At the time, Willis was supervised by David Salantry. Following Gainer's promotion, he occasionally supervised Willis. In October, 1986, Willis was disciplined by Salantry for tardiness. Willis tore up the discipline citation and complained to the production manager Ronald Jones, in Gainer's presence, threatening to bring an action with the EEOC. Jones then suspended Willis for insubordination. The following year, Willis filed a charge with the EEOC alleging that his suspension was due to racial discrimination and retaliation. After receiving a right to sue letter, Willis filed suit under Title VII and 42 U.S.C. § 1981. In 1990, Willis agreed to dismiss his suit in return for payments in settlement of his claims. The confidential settlement agreement further provided that Willis would resign from Avery and that Avery would provide Willis a letter of reference.

In May 1991, Willis applied for a position at Container Corporation of America ("CCA"). On the application he stated that he left Avery due to "lack of work," and gave the name and phone number of Ronald Jones as a contact person for Avery. He also attached a copy of the letter of reference from Avery. Following a favorable interview, a CCA representative contacted Avery. The CCA representative spoke with Ronald Gainer rather than Ronald Jones, whom Willis had listed as a contact person. Gainer stated that Willis had attendance or absentee problems, and that he left Avery because of an arbitration case that awarded him a cash settlement on the condition that he terminate his employment with Avery. CCA did not hire Willis based on Gainer's comments.

Willis filed a third charge with the EEOC against Avery in 1992, alleging that Avery's provision of a negative employment reference to CCA constituted unlawful retaliation in violation of Title VII. The EEOC filed a complaint against Avery asserting retaliation in violation of 42 U.S.C. § 2000e–3(a). Willis was granted limited Intervenor status. Following cross-motions for summary judgement, which were denied by the district court, a four-day bench trial was held.

On November 14, 1994, the district court issued its Findings of Fact and Conclusions of Law. It assumed, without deciding, that Gainer was Avery's agent in making the employment reference. It found that Willis had proven by a preponderance of the evidence: 1) that he was engaged in a protected activity; 2) that Gainer knew of Willis' protected activity; and 3) that Gainer's employment reference constituted adverse employment action. However, the district court entered judgment in favor of Avery. The district court concluded that Plaintiffs had failed to establish a *prima facie* case of retaliation, as the evidence did not establish, by a preponderance, the existence of a causal connection between Willis' protected activities and Gainer's negative employment reference.

## II.

On appeal, Plaintiffs contend that the district court erred when it determined that Plaintiffs failed to present sufficient evidence to meet their burden of establishing a *prima facie* case of retaliation.

■ This court reviews the evidence necessary to establish a *prima facie* case of employment discrimination under the "clearly erroneous" standard of review. *Anderson v. Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). However, the elements that must be proven in a *prima facie* case are a question of law which is reviewed *de novo. Gafford v. General Electric Co.,* 997 F.2d 150, 168 (6th Cir.1993).

### A.

■ We begin by confronting Plaintiffs' argument that the evidence presented establishes a *prima facie* case of discrimination.

In order to find a *prima facie* case of retaliation under Title VII a plaintiff must prove by a preponderance of the evidence: 1) plaintiff engaged in activity protected by Title VII; 2) plaintiff's exercise of his civil rights was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action. *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987). The district court erred in determining that Plaintiffs had failed to demonstrate a *prima facie* case. Indeed, the Supreme Court held in *United States Postal Serv. Bd. v. Aikens,* 460 U.S. 711, 717, 103 S.Ct. 1478, 1482–83, 75 L.Ed.2d 403 (1983), that it is inappropriate for a court to resolve a discrimination case on grounds that a *prima facie* case had not been made, after the case has been fully tried on the merits.

*Aikens* involved a suit alleging employment discrimination on the basis of race that was fully tried on the merits. The Supreme Court found that in such an instance it was unnecessary for parties thereafter to address the question of *prima facie* case, and, by so doing, the parties unnecessarily evaded the ultimate question of discrimination *vel non. Aikens,* 460 U.S. at 714, 103 S.Ct. at 1481. Accordingly, after a discussion of the appropriate shifting of burdens, the Court held that the district court "erroneously focused on the question of prima facie case rather than directly on the question of discrimination," and remanded the case to the district court "so that it may decide on the basis of the evidence before it whether the Postal Service discriminated against Aikens." *Id.* at 717, 103 S.Ct. at 1483.

In the instant case, the district court denied Plaintiffs' summary judgment motions, awkwardly finding that "a reasonable jury could find ... that there was no causal connection...." J.A. at 1230. We interpret the district court's ruling to mean that it believed that genuine issues existed with respect to the *prima facie* case. At that point, however, the court should have drawn appropriate reasonable inferences and ruled on whether or not a *prima facie* case had been made, reserving for trial only the ultimate issue of

discrimination. The fact that the court was faced with the *prima facie* case question at the summary judgment stage and then allowed the case to go to trial, could be construed as a tacit acknowledgment of Plaintiffs' *prima facie* case. Proof of the *prima facie* case is only the first step in the proof of a Title VII claim.

 The prima facie case is not the final inquiry, but rather the first prong of analysis which defeats a motion for dismissal prior to trial. The Supreme Court so noted this in *Aikens* when it stated: "By establishing a prima facie case, the plaintiff in a Title VII action creates a rebuttable 'presumption that the employer unlawfully discriminated against' him." *Aikens,* 460 U.S. at 714, 103 S.Ct. at 1481 (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). In fact, a *prima facie* case is defined as "sufficient evidence in the type of case to get plaintiff past a motion for directed verdict in a jury case or motion to dismiss in a nonjury case; it is the evidence necessary to require defendant to proceed with his case." *Black's Law Dictionary* 1190 (6th ed. 1990). The finding that plaintiff has proven a *prima facie* case forces the defendant to proceed with its case. It necessarily follows, then, that the defendant is not entitled to judgment as a matter of law or summary judgment if a plaintiff has proven its *prima facie* case. Following a trial on the merits, the district court, therefore, cannot return to a consideration of whether plaintiff has proven its *prima facie* case. This is a preliminary matter which cannot be revisited at a later time.

The reason for this is quite simple and logical. To find that a *prima facie* case is lacking after the parties have presented all of the evidence confuses the traditional role of *prima facie* proof. There must be a lower burden of proof to sustain a *prima facie* case than to win a judgment on the ultimate issue of discrimination, and the manner in which the district court handled this case does not allow for that distinction. We must be careful not to lose sight of the methods of evidence, particularly in a case such as this where the *prima facie* causal connection

question is similar to the ultimate question of whether the defendant acted with retaliatory intent or motive. Otherwise, we would perpetually compound an already difficult distinction, in a Title VII retaliation case, between a plaintiff's *prima facie* case and his ultimate burden.

The EEOC offers that its burden to establish a *prima facie* case of retaliation "is not onerous." *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 377 (6th Cir.1984). Indeed, it "is a burden easily met." *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987) (citations omitted). Further, to establish the element of causal link a plaintiff is required to "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir.1990) (quoting *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir.1982)); *see also Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985), *cert. denied,* 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985) (the causal link element requires "merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated."). Accordingly, at the *prima facie* stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible.

The amount of evidence in the *prima facie* context is not the same amount necessary to win a judgment. To win a judgment, a plaintiff is required to overcome the additional obstacle of the defendant's rebuttal and convincingly demonstrate the existence of discrimination. At that stage, he not only must present facts and evidence allowing inferences to be drawn in his favor, but also must present a case that allows those inferences to be of significant force as to overcome the defendant's rebuttal or prove the rebuttal pretext. All that is required of plaintiff at the *prima facie* stage is to demonstrate that he has a case, that the evidence is on his side. The Court so noted in *Aikens:*

[W]hen the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact-finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell–Burdine* presumption "drops from the case," and "the factual inquiry proceeds to a new level of specificity."

*Aikens,* 460 U.S. at 714–15, 103 S.Ct. at 1481–82 (footnote and citations omitted).

## B.

It is beyond dispute that a plaintiff in a Title VII suit "has the burden of proving *by the preponderance of the evidence* a prima facie case of discrimination." *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093 (emphasis added). However, proof of a prima facie case is only the first stage of proof in a Title VII case as outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2746–48, 125 L.Ed.2d 407 (1993). These cases analyze at least three stages of proof:

First, the plaintiff has the burden of proving by the *preponderance of the evidence* a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden [of production] shifts to the defendants "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093 (emphasis added). *St. Mary's v. Hicks* places the additional burden on Plaintiffs that they must prove not only that defendant's reason was a pretext, but that the real reason was discrimination. *St. Mary's,* 509 U.S. at 511, 113 S.Ct. at 2749.

The proper inquiry following the presentation of all evidence in a Title VII case is whether plaintiff has proven its case by a preponderance under the *McDonnell Douglas–Burdine–St. Mary's* burden shifting framework. At this stage in the case, the relevant inquiry should not be whether plaintiff has proven its *prima facie* case.

The issue the district court leaves for this court is whether the district court erred in finding that Plaintiffs failed to present sufficient evidence to meet their burden of establishing a *prima facie* case of retaliation. In this case there was ample evidence from which the district court could have inferred retaliation at the *prima facie* stage. Nonetheless, because the case was heard on the merits the district court's focus at that stage should not have been the elements of a *prima facie* case, rather, the court should have focused on the ultimate question of discrimination. "[T]o argue about a *prima facie* case after the case is fully tried is not helpful in resolving the key factual issue." *Enstrom v. Beech Aircraft Corp.,* 712 F.Supp. 841, 849 (D.Kan.1989). Not only should a district court decline to rule in that manner, we should not review the case for whether a *prima facie* case had been made, but rather, whether the ultimate issue of discriminatory retaliation falls in the favor of the Plaintiffs or Defendant.

The district court sitting as the fact-finder as well as the judge, ultimately decided the case at the *prima facie stage,* not engaging in the burden shifting outlined above. Consequently, Avery's burden to show a nondiscriminatory reason and Plaintiffs' burden to demonstrate pretext and ultimate discrimination was not ruled upon, leaving this court to examine only the *prima facie* case issue.

Indeed "it is now firmly established in this circuit that when a case has been tried on the merits, a reviewing appellate court need not address the sufficiency of a plaintiff's *prima facie* case, and may instead proceed directly to the ultimate question whether plaintiff has established discrimination." *Brownlow v. Edgecomb Metals Co.,* 867 F.2d 960, 963 (6th Cir.1989); *see also Simpson v. Midland–*

*Ross Corp.* 823 F.2d 937, 942 (6th Cir.1987) (citing *Ridenour v. Lawson Co.,* 791 F.2d 52, 57–58 (6th Cir.1986)); *Wilkins v. Eaton Corp.,* 790 F.2d 515, 523 (6th Cir.1986). However, in these cases this court had a record *complete* with a decision by the fact-finder on the ultimate issue in the case, and the establishment of a *prima facie* case was raised only on appeal.

■ In the instant matter, the record is *incomplete.* Because the district court stopped with the *prima facie* case, following a trial on the merits, there is no evidence in the record of the district court employing the burden shifting approach or making a finding on the ultimate issue of discrimination. Accordingly, it is not plausible for this court to examine what is not in the record. *See RKO Bottlers of Toledo, Inc.,* 743 F.2d at 379. We are unable to make a determination on the ultimate issue of discrimination because the record is incomplete on this issue.

Because the district court failed to use the burden shifting approach outlined in *McDonnell Douglas* and its progeny, the judgment of the district court must be reversed. The district court failed to make a determination on the ultimate issue of the case, although all of the evidence had been presented. Instead, the district court concluded that judgment should be entered for the Defendant because Plaintiffs failed to prove a *prima facie* case. By allowing the case to proceed to a trial on the merits, the district court implicitly acknowledged the existence of Plaintiffs' *prima facie* case. Defendant would only have been entitled to judgment if Plaintiffs had failed to carry their burden in proving the ultimate issue of discrimination.

### C.

While it may be considered odd that Willis is suing for alleged discrimination which did not occur while he was an employee of Avery, this court has held that former employees do have standing to sue under the Civil Rights Act of 1964. *See Dunlop v. Carriage Carpet,* 548 F.2d 139, 142 (1977). However, we also note that the Supreme Court has taken certiorari of *Robinson v. Shell Oil,* 70 F.3d 325 (4th Cir.1995), *cert. granted,* — U.S. —, 116 S.Ct. 1541, 134 L.Ed.2d 645 (U.S. Apr. 22, 1996) (No. 95–1376), which will be heard this term. *Robinson* held that employees as defined by Section 704(a) of the Civil Rights Act of 1964 does not include former employees. *Robinson,* 70 F.3d at 329. Nevertheless, because we decide this case on unrelated grounds, we do not find it necessary to hold this case in abeyance pending the Supreme Court's decision in *Robinson.*

Accordingly, this case is **REVERSED** and **REMANDED** to the district court for a determination on the ultimate issue of discrimination.

RYAN, Circuit Judge, dissenting.

The majority holds that "it [was] inappropriate for [the district] court to resolve [the] case on grounds that a *prima facie* case had not been made [because] the case ha[d] been fully tried on the merits." Maj. op. at 860–861. Because I think it was entirely appropriate for the district court to so rule, I must respectfully dissent.

### I.

The 1964 Civil Rights Act makes it unlawful "for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice" by Title VII or because he has made a charge under the statutory scheme. 42 U.S.C. § 2000e–3(a). There are four elements to a *prima facie* showing of retaliation: a plaintiff must prove that (1) he engaged in an activity protected by Title VII; (2) the exercise of his civil rights was known by the defendant; (3) the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Harrison v. Metropolitan Gov't,* 80 F.3d 1107, 1118 (6th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 169, 136 L.Ed.2d 111 (1996).

The office of the *prima facie* case in a Title VII action has been explained many times by many courts, although I believe it has been misunderstood by the majority here. "By establishing a prima facie case, the plaintiff in a Title VII action creates a rebuttable 'presumption that the employer unlawfully

discriminated against' him." *United States Postal Serv. Bd. v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). "The prima facie case method ... was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Id.* at 715, 103 S.Ct. at 1482 (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). As a result, the *Aikens* Court noted, "when the defendant *fails to persuade* the district court to dismiss the action for lack of a prima facie case," and the case proceeds to a full trial on the merits, then the district court is "in a position to decide the ultimate factual issue in the case," that is, " '[whether] the defendant intentionally discriminated against the plaintiff.'" *Id.* at 714–15, 103 S.Ct. at 1481–82 (emphasis added) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093). The majority interprets *Aikens* to mean that the *prima facie* case simply may not be the basis for the district court's judgment following trial. This interpretation, I believe, is wrong for several reasons.

### A.

First, here, there was no "fail[ure] to persuade" by the defendant, a point all but ignored by the majority. The plaintiff, not the defendant, filed a motion for summary judgment. In the course of its motion, the plaintiff necessarily argued that there was no genuine issue of material fact with respect to any element of the *prima facie* showing. The defendant responded by pointing to its evidence respecting the fourth, causal-connection prong, and arguing that this evidence created a genuine issue of material fact as to the adequacy of the *prima facie* case. The district court agreed:

> [W]hile the EEOC and Willis have presented evidence that Ron Gainer was aware of this protected activity, other evidence in the record supports the conclusion that Gainer did not know of Willis'

EEOC charges or his lawsuit before Butcher called. If Gainer was unaware of Willis' EEOC charge, there was no causal connection between Willis' protected activity and the assertedly negative employment reference.

> Plaintiffs bear the burden of proving their *prima facie* case by a preponderance of the evidence. Viewing the evidence in the light most favorable to Avery Dennison, a reasonable jury could find that Gainer was not aware of Willis' EEOC charges or his lawsuit and that there was no causal connection between Gainer's actions and Willis' protected activity.

(Citation omitted.) Unlike the majority, I find nothing "awkward[ ]" about this holding, maj. op. at 860–861, and I do not understand the majority's suggestion that some extraordinary "interpret[ation]" is necessary in order to discern the district court's meaning, *id.* It is plain enough to me that the district court stated that the plaintiff failed to show that there was no genuine issue of material fact with respect to the causal-connection prong of the plaintiff's *prima facie* case, and that its motion for summary judgment failed accordingly.

But that is *all* the district court said. I am at a loss to comprehend the basis for the majority's belief that "[t]he fact that the court was faced with the *prima facie* case question at the summary judgment stage and then allowed the case to go to trial, [sic] could be construed as a tacit acknowledgment of Plaintiffs' *prima facie* case." *Id.* I am, likewise, unpersuaded by the majority's *ipse dixit* that "[b]y allowing the case to proceed to a trial on the merits, the district court implicitly acknowledged the existence of Plaintiffs' *prima facie* case." *Id.* at 863. The majority's conclusion that the rejection of the plaintiff's summary judgment motion was tantamount to an approval of the adequacy of the plaintiff's *prima facie* showing is at best, a *sine qua non,* and at worst, a contradiction of the record. The district court was never asked to make such a ruling, and there is nothing in the record suggesting it would have been so inclined if it *had* been asked.

The majority's recommended course is, moreover, strongly contradicted by this court's decision in *Gafford v. General Electric Co.*, 997 F.2d 150, 168 (6th Cir.1993) (Jones, J.). *Gafford* was a sex discrimination claim arising under a Kentucky statute that "is virtually identical to the corresponding provision of Title VII." *Id.* at 166. This court, accordingly, applied federal Title VII law to address the plaintiff's arguments, and in so doing, flatly rejected the argument that "when the district court let [the plaintiff's] discrimination claim ... go to the jury, it necessarily found there to be a *prima facie* case," and the corollary argument that "it was error to submit to the jury the question whether a *prima facie* case had been established." *Id.* at 167–68. The *Gafford* court held that the district court correctly instructed the jury on the "three-stage order of proof" prescribed by *Burdine* and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), rather than itself deciding the *prima facie* question and submitting only the ultimate issue of discrimination to the jury. *Gafford*, 997 F.2d at 167–69. This court wrote as follows:

> [T]he plaintiff in a disparate treatment case must prove to the factfinder, by a preponderance of the evidence, that each component of her prima facie case has been satisfied.
>
> . . . .
>
> ... [I]t is clear that the issue of whether a *prima facie* case has been established ... is not ... a legal issue for the court not the jury. Thus, it was not error *per se* for the district court to have submitted the question of whether a *prima facie* case had been established to the jury. We reject [the plaintiff's] contention that when the district court let her discrimination claim ... go to the jury, it necessarily found there to be, as a matter of law, a *prima facie* case. From the above discussion, it is clear that a court may submit matters to the factfinder to resolve genuine issues of material fact.

*Id.* at 168–69.

The majority, however, believes that, in this case, after rejecting the plaintiff's motion for summary judgment, "the court should have drawn appropriate reasonable inferences and ruled on whether or not a *prima facie* case had been made, reserving for trial only the ultimate issue of discrimination." Maj. op. at 860–861. This is a rather astonishing suggestion, as it can only mean that the majority believes the district court should have reached out and *sua sponte* ruled on the *prima facie* case, since the defendant had not yet asked the court to do so. Thus, the majority holds, once a district court rejects a plaintiff's motion for summary judgment in a Title VII case, it must invent a corresponding motion, attribute it to the defendant, and without benefit of argument or presentation of testimony or witnesses, proceed to weigh the evidence and act as factfinder on the *prima facie* question. Unsurprisingly, the course proposed by the majority is not supported by a single citation to authority.

**B.**

I conclude that the majority's view that the question of the *prima facie* case "is a preliminary matter which cannot be revisited at a later time," maj. op. at 861, is simply premised on a misunderstanding of *Aikens*. *Aikens* does not stand for the proposition that a district court is flatly prohibited from considering the adequacy of the *prima facie* case after the case as a whole has proceeded to trial, even when the defendant has never asked the district court to consider the question. Instead, in *Aikens*, the Court criticized a district court that, upon the defendant's motion made at the close of the plaintiff's case, "decided that [the plaintiff] had made out a prima facie case," *Aikens*, 460 U.S. at 714 n. 4, 103 S.Ct. at 1481 n. 4, and then later, after the conclusion of the bench trial, changed its mind and decided that the plaintiff had not, in fact, made out a *prima facie* case. This is just not the situation with which we are presented, as I have explained above.

I note, however, a certain lack of clarity in *Aikens* itself. Although the Court wrote that "at one point in the trial the District Court decided that [the plaintiff] had made out a prima facie case," *id.*, its basis for this conclusion was simply the fact that the district

court had denied the defendant's motion to dismiss on the ground that there was no *prima facie* case, made following the conclusion of the plaintiff's case-in-chief. Standing alone, such a rejection is not the equivalent, of course, of a conclusion that the plaintiff had proved his *prima facie* case by a preponderance; as with a denial of summary judgment, it means only that the plaintiff has produced enough evidence to warrant presenting his case to the factfinder. It is possible, however, because the trial in *Aikens* was a bench trial, that in rejecting the defendant's motion, the district court had also held that the plaintiff had sustained his burden of proof. The *Aikens* Court was silent as to this or any other rationale that would have merited its conclusion that the district court, at one point, had decided that the plaintiff had made out a *prima facie* case.

In any event, I find this new rule impossible to reconcile with *Gafford*, where this court so firmly stated its view that the adequacy of the *prima facie* case should be submitted for decision to the factfinder, there, the jury. Indeed, this court explicitly held that because the jury answered the first special interrogatory, "Do you believe from the evidence that [the plaintiff] has established a prima facie case ...?," in the negative, it "did not have to go further." *Gafford*, 997 F.2d at 170. A factfinder is a factfinder; if it was appropriate for the *Gafford* jury to resolve the case against the plaintiff on the basis of the failure to make out a *prima facie* claim, it must have been equally appropriate for the district court to do so here.

### C.

In addition to concluding that it is not a rule compelled, or even supported, by existing precedent, I find no jurisprudential justification for inventing the rule posited by the majority. The majority, it seems, believes that the district court shortchanged the plaintiff by resolving the case on the inadequacy of the *prima facie* showing. Once again, this belief is premised on a faulty understanding of the applicable law, namely, the majority's view that the *prima facie* showing is characterized by a lower burden of proof. The majority asserts that "[t]here must be a lower burden of proof to sustain a *prima facie* case than to win a judgment on the ultimate issue of discrimination," maj. op. at 861, and that "[t]he amount of evidence in the *prima facie* context is not the same amount necessary to win a judgment," maj. op. at 861–862. In fact, both assertions are completely incorrect.

As the majority opinion itself notes, it is well-established that a plaintiff in a Title VII disparate treatment suit "has the burden of proving *by the preponderance of the evidence* a prima facie case of discrimination." *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093 (emphasis added); *see Gafford*, 997 F.2d at 168. The EEOC argued here that to prove a *prima facie* claim, it was sufficient for a plaintiff simply to proffer evidence sufficient to raise an inference that the protected activity was the likely reason for the adverse action. The majority appears to have been persuaded by this contention. But to support this view, both the EEOC and the majority rely on a number of decisions from this court describing the *prima facie* showing in indulgent terms, without recognizing that the cases consider the *prima facie* showing from a summary judgment standpoint. All that a plaintiff—or here, an unusual case, the defendant—has to do to defeat summary judgment is to produce some evidence creating a genuine issue of material fact. Thus, when this court stated in *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127 (6th Cir. 1990), that a plaintiff is merely required to "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action,'" *id.* at 1135 (citation omitted), it meant that this was all that was required for the plaintiff to overcome the defendant's summary judgment motion.

It is nonetheless true that the *prima facie* burden is not a demanding one, simply because, as a substantive matter, the four prongs of the *prima facie* case are easily satisfied. That is, they ask simple questions: Did the plaintiff engage in protected activity? Did the defendant know about the protected activity? Did the plaintiff suffer an adverse employment action? And, pertinent to this case, was there a causal connection between

the protected activity and the adverse employment action?

To establish this causal connection, the plaintiff "had to demonstrate that [Gainer] was discriminatorily motivated." *Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir.1992). He could have done so in a variety of ways. One, a court may "look[ ] to the temporal proximity of the adverse action to the protected activity to determine whether there is a 'causal connection.'" *Harrison*, 80 F.3d at 1118. Alternatively, the plaintiff may simply produce circumstantial evidence of discriminatory motivation. *Morgan*, 959 F.2d at 1547. The district court found Gainer to be a credible witness, and Gainer testified, first, not to remember any of the incidents in which Willis allegedly claimed of racial discrimination; second, not to be aware that Willis had filed a suit alleging racial discrimination; and third, that he bore no animosity toward Willis. There was, moreover, a large temporal gap between the time of the plaintiff's protected activities and Gainer's adverse employment action. Given these findings, I can find no error in the district court's conclusion that the plaintiff failed to prove, by a preponderance, a causal connection between his Title VII protected activity and Gainer's negative reference. *Cf. Johnson v. HHS*, 30 F.3d 45, 47 (6th Cir. 1994).

## II.

In sum, I fail to see the wisdom in the new rule created by the majority, in which the district courts are now forbidden, once a trial has occurred, from entering judgment on the ground that the *prima facie* burden has not been proved by a preponderance of the evidence. I recognize the case law from this circuit that "when a case has been tried on the merits, a reviewing appellate court *need not* address the sufficiency of a plaintiff's *prima facie* case, and *may* instead proceed directly to the ultimate question whether plaintiff has established discrimination," *Brownlow v. Edgecomb Metals Co.*, 867 F.2d 960, 963 (6th Cir.1989) (emphasis added), *quoted in* maj. op. at 862–863, and I have no quarrel with that proposition. I nonetheless can see no rationale for hamstringing the district court in its decisional process. If a case is most easily resolvable on the ground that a *prima facie* case has not been met, why should the district court be prohibited from doing so? Questions of judicial economy strongly counsel that it should not be. I, accordingly, dissent.