Ronald COLEMAN, et al., Plaintiffs,

v.

TOYS "R" US, INC., Defendant.

No. 1:95 CV 2013.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 20, 1997.

Peter C. Myers, Cleveland, OH, for plaintiffs.

Diane Windholz, James R. Williams, Scott T. Baken, Jackson, Lewis, Schnitzler & Krupman, New York City, Steven D. Shafron, Larry S. Gordon, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for defendant.

## MEMORANDUM OF OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court upon a Motion for Summary Judgment (Document # 18) filed by Defendant Toys "R" Us, Inc. (hereinafter Toys "R" Us). For the reasons that follow, Defendant's Motion is GRANTED.

### FACTUAL BACKGROUND

Plaintiffs Ronald Coleman and Jaynee Harwell, both African–Americans, worked for Toys "R" Us, Inc. at its retail toy store in Euclid, Ohio. Toys "R" Us hired Mr. Coleman as a Storeroom Clerk in August 1986, and later promoted him to Department Head in April 1993. Ms. Harwell was hired as a Cashier in August 1989, and was promoted to Department Head in October 1992.

By all accounts, both Mr. Coleman and Ms. Harwell met the expectations of the Department Head position. However, in March 1994, Toys "R" Us decided to upgrade the position of Department Head making it operate as an extension of management. This upgrade required Department Heads to possess supervisory and managerial skills rather than merely the ability to perform basic operational tasks.

In order to implement this change, Toys "R" Us instructed its Store Directors to review the qualifications of their Department Heads to determine who would continue in the revised Department Head position. Any Department Heads not possessing supervisory, leadership and communication skills would be considered unqualified for the revised Department Head position and would be demoted to Store Clerks. The demotion would be accompanied by a $1.00/hour pay reduction.

At the Euclid store where Plaintiffs worked, Toys "R" Us employed nine persons as Department Heads. After a review of these nine Department Heads, two employees were considered qualified for the revised position and remained Department Heads while the other seven employees were demoted to Store Clerks. Of the seven persons demoted, four were black and three were white. The two employees not demoted at that time were white.

Two months after his demotion, Mr. Coleman resigned from Toys "R" Us. Then, in September 1994, Ms. Harwell, who had requested part time status shortly after being demoted, resigned as well. Both found employment elsewhere. By the time of Ms. Harwell's departure, two of the original seven demoted employees were promoted to the revised Department Head position—one black and one white.

### PROCEDURAL HISTORY

Plaintiffs filed their Complaint on September 15, 1995 alleging that Defendant had discriminated against them because of their race in violation of Title VII of the Civil Rights Act of 1964 as amended in 1991, 42 U.S.C. 2000e *et seq.* (hereinafter Title VII). They also charged that Defendant's conduct violated Ohio Revised Code 4112.02(A) because it constituted discrimination because of race and color. Further, Plaintiffs alleged that the actions of Defendant constituted constructive discharge from employment because the working conditions were so difficult and unpleasant that a reasonable person would feel compelled to resign. Plaintiffs sought back pay, reimbursement for lost benefits, and any additional damages for the harm suffered.

Defendant, in its Answer, denied the allegations of discrimination contained in Plaintiffs' Complaint. Defendant also denied that it constructively discharged the Plaintiffs and specifically charged that Plaintiffs' constructive discharge claim is not properly before this Court.

After full discovery, Toys "R" Us filed a Motion for Summary Judgment. Plaintiffs then filed a brief in opposition, to which Toys "R" Us replied. The Motion for Summary Judgment and related briefs are now before the Court.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary

standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdicts." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

■■■ Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.,* 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley,* 20 F.3d at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that

might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

## DISCUSSION

In its Motion for Summary Judgment, Defendant maintains that it is entitled to summary judgment because the Plaintiffs cannot establish a prima facie case of discrimination, because it had legitimate non-discriminatory reasons for its demotions, and because Plaintiffs cannot show that those reasons are a pretext for intentional discrimination on the basis of race. In addition, Defendant contends the Plaintiffs' claim for constructive discharge is procedurally deficient and thus, is not properly before the Court. In the alternative, Defendant maintains that the constructive discharge claim is substantively without merit.

Plaintiffs argue that genuine issues of material fact remain to be litigated and that Defendant is not entitled to summary judgment. They maintain that they possess direct evidence of racial discrimination; that they can establish a prima facie case of racial discrimination because they were qualified

for the positions of Department Head; and, that Defendant's proffered reason is a pretext for discrimination because they were not placed on Defendant's 90–Day Action Plan prior to being demoted.

### Discrimination Claims [1]

■ In order to establish a case of race discrimination under Title VII a Plaintiff must present either direct evidence of intentional discrimination on the part of the Defendant or show the existence of circumstantial evidence which creates an inference of discrimination. *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995). Use of direct evidence to establish discrimination was explained in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), and has been referred to as the "mixed-motive" theory. The use of circumstantial evidence to infer discrimination was explained in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and has been referred to as the "pretext" theory.

The pretext theory is demonstrated under the now familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. Under that framework, plaintiffs in a Title VII action must first establish a prima facie case of racial discrimination by demonstrating that they: 1) are members of a protected class; 2) were qualified for the position; 3) suffered an adverse employment decision; and, 4) were replaced by persons outside the protected class or, alternatively, were treated worse than similarly situated non-protected persons. *Id.; Mitchell v. Toledo Hospital,* 964 F.2d 577 (6th Cir.1992); *Shah v. General Electric Co.,* 816 F.2d 264, 268 (6th Cir.1987).

Plaintiffs who establish a prima facie case create a presumption that the employer unlawfully discriminated against them. The burden, then, shifts to the defendant to rebut

---

1. The Ohio Supreme Court has determined that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of [Ohio Revised Code] Chapter 4112." *Ohio Civ. Rights Comm. v. Ingram,* 69 Ohio St.3d 89, 630 N.E.2d

669, 672 (1994) (citing *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm.,* 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981)). Accordingly, analysis of the Title VII claim and Ohio Revised Code claim will be considered together.

the presumption of discrimination by producing a legitimate, nondiscriminatory reason for its decision. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1091, 1094, 67 L.Ed.2d 207 (1981).

If the prima facie case is so rebutted by the defendant, the plaintiffs then have the burden to prove that the proffered reasons were not the true reasons, but in fact, constituted a pretext for intentional discrimination on the basis of race. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

A mixed-motive case involves different burdens. In a mixed-motive case, an employee who produces direct evidence of discriminatory animus shifts the burden to the employer to produce evidence sufficient to show that it would have made the same decision if illegal bias had played no role in the employment decision. *Price Waterhouse*, 490 U.S. at 244–45, 109 S.Ct. at 1787–88. Thus, unlike in a pretext case where the burden of persuasion remains at all times with the plaintiff, direct evidence of discrimination in a mixed motive case does more than shift the burden of production to the defendant, it requires the defendant to persuade the fact-finder that even if discrimination was a motivating factor in the employment decision, it would have made the same decision regardless of the discriminatory animus. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir.1994).

■ In this case, Plaintiffs contend they have direct evidence of discrimination. Specifically Plaintiffs believe that Ms. Vicky Owen, former Assistant Director of the Toy "R" Us store in Euclid, possessed animosity toward African–Americans which was logically linked to the decision to demote them. In order to demonstrate direct evidence of discrimination, Plaintiffs presented the deposition testimony of Toys "R" Us employee Vivian Roland. Ms. Roland stated in her deposition that Ms. Owen had made a discriminatory comment, "She said to me one time ... [Ms. Harwell] ... was a lazy black bitch..."

■ Although a slur like the one attributed to Ms. Owen may constitute evidence of her racial attitude, her alleged comment does not necessarily constitute direct evidence of racial discrimination sufficient to shift the burden of persuasion to Toys "R" Us in this case. *Talley*, 61 F.3d at 1249. "[S]tray remarks in the workplace, while perhaps probative of [a discriminatory animus], cannot justify requiring the employer to prove that its [employment] decisions were based on legitimate criteria. Nor can statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard; ... What is required is ... direct evidence that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching the decision." *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. at 1805 (O'Connor, J., concurring). *See also, Armbruster v. Unisys Corp.*, 32 F.3d 768 (3d Cir.1994); *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325 (7th Cir. 1989).

Although it is not clear from the evidence whether or not Ms. Owen, as Assistant Director, was involved in the decision to demote the Plaintiffs, there is no evidence to suggest that, even if true, the remark attributed to her was in any way related to the decision-making process. Therefore, the single isolated remark attributed to Ms. Owen constitutes a stray remark insufficient to shift the burden of proof to the Defendant. *Id.* Accordingly, no direct evidence of discrimination has been presented in this case and Plaintiffs must proceed to prove discrimination under the *McDonnell Douglas* framework.

■ In considering Plaintiffs' claim of discrimination under the *McDonnell Douglas* framework, Plaintiffs can clearly demonstrate the first element of their prima facie because as African–Americans they are members of a protected class. They also satisfy the third element because they each suffered an adverse employment decision when they were demoted from the position of Department Head.

The fourth element of the framework presents a more difficult quandary. Although they have not shown that they were replaced by persons outside their protected class, Plaintiffs present an argument for satisfaction of the fourth element by providing evidence that they were treated worse than similarly situated white employees, i.e. the two Department Heads not demoted were white. *Shah,* 816 F.2d at 268. This evidence may be insufficient to prove a prima facie case, however, given that other similarly-situated non-protected persons were treated the same, i.e. three of the seven demoted were white. Determination of this issue is relevant to the ultimate issue of the case and critical at the summary judgment stage given the Sixth Circuit's recent pronouncement that whether or not a plaintiff has made a prima facie case may not be revisited after the case proceeds to trial. *Equal Employment Opportunity Commission v. Avery Dennison Corp.,* 104 F.3d 858, 863 (6th Cir. 1997).

This decision places the district court in an untenable situation when a defendant moves for summary judgment. If the district court, weighing all of the evidence in a light most favorable to the nonmoving party, pursuant to FED.R.CIV.P. 56, concludes *a genuine issue of material fact exists* as to whether or not Plaintiffs have met the prima facie elements, the court may be prevented from later concluding, after presentation of Plaintiffs' case in chief, that Plaintiffs failed to prove such a prima facie case *by a preponderance of the evidence. See, Id.* at 867 (Ryan, J., dissenting). This dilemma arises because the Sixth Circuit, in interpreting *United States Postal Serv. Bd. v. Aikens* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403(1983), concluded that "[t]he fact that the court was faced with the prima facie case question at the summary judgment stage and then allowed the case to go to trial, could be construed as a tacit acknowledgment of Plaintiffs' prima facie case." *Avery Dennison,* 104 F.3d at 861. Thus, "[b]y allowing the case to proceed to a trial on the merits, the district court implicit-

ly acknowledged the existence of Plaintiffs' prima facie case." *Id.* at 863. Such a conclusion does not emanate from *Aikens,* however, because in that case the Supreme Court concluded that the district court could not revisit whether or not the plaintiffs had proven a prima facie case in a bench trial after previously concluding, at the close of the plaintiffs' case in chief, that the prima facie case had been made. *See Aikens,* 460 U.S. at 714–15, 103 S.Ct. at 1481–82; *See also, Avery Dennison,* 104 F.3d at 865–6 (Ryan, J., dissenting).

Not only does the Sixth Circuit's pronouncement in *Avery Dennison, supra,* appear to be a misinterpretation of *Aikens, supra,* it also seems to be in conflict with its own published opinion in *Gafford v. General Electric Co.,* 997 F.2d 150, 168 (6th Cir.1993) wherein the court explained, "[T]he plaintiff in a disparate treatment case must prove to the factfinder, by a preponderance of the evidence, that each component of [the] prima facie case has been satisfied." Thus, in *Gafford* the Court concluded that the district court had not erred when it questioned the jury as to whether the plaintiff had established a prima facie case. *Id.* at 169. Accordingly, the *Avery Dennison* decision that plaintiffs' prima facie showing is implicit in the case proceeding to trial after the denial of defendant's motion for summary judgment, is wholly inconsistent with the Sixth Circuit's holding in *Gafford* that the plaintiff must prove to the factfinder each element of the prima facie case by a preponderance of the evidence.

Nevertheless, disposition of this case does not rise or fall on the aforementioned determination of whether or not the Plaintiffs have met the fourth element of the prima facie case. The Plaintiffs must also satisfy the second element of the *McDonnell Douglas* test and show that they were qualified for the position—a burden they clearly have failed to meet. In this case, "qualified for the position" relates to the revised Department Head position from which they were demoted.[2] The revised position required su-

---

2. Plaintiffs have made no allegation that the Defendant's decision to upgrade the position constituted intentional discrimination, but rather that

they suffered disparate treatment when demoted from the revised Department Head position. Accordingly, the proper analysis involves a determi-

pervisory, leadership and communications skills, therefore, the Plaintiffs must demonstrate that they were both qualified for the position given those new requirements.

The only evidence Plaintiffs have presented to demonstrate that they were qualified for the positions consists of past performance reviews which indicated they both met the expectations of Defendant as Department Heads, as such position existed prior to its upgrade. This information, although relevant to show that they were qualified for their positions before the Department Head position upgrade, fails to provide any information as to whether Plaintiffs possessed the ability to perform the job of Department Head as revised. Repeated references to past satisfactory job reviews are not conclusive to this determination because the positions required different qualifications. Furthermore, Plaintiffs admitted in their deposition testimony that they had previously been advised of deficiencies in the areas of leadership, communication, and other managerial skills. Accordingly, the undisputed evidence reveals that both Plaintiff Coleman and Plaintiff Harwell were not qualified for the Department Head position after the job description changed. Therefore, because Plaintiffs cannot demonstrate a prima facie case of race discrimination, the Defendants are entitled to judgment as a matter of law.

### Constructive Discharge Claim

■■■ A claim for constructive discharge is cognizable under Title VII. *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1249 (6th Cir.1989); *See also, Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 887 (3rd Cir.1984) (noting that "the application of the constructive discharge doctrine to Title VII cases has received apparently universal recognition among the courts of appeals which have addressed the issue."). The cognizance of the claim under Title VII notwithstanding, claimants must first pursue administrative relief in order for federal courts to have subject matter jurisdiction of Title VII claims. *Ang v. Procter & Gamble Co.*, 932 F.2d 540 (6th Cir.1991). Therefore, "if the claimant did not first present a claim to the Equal Employment Opportunity Commission (EEOC),

that claim may not be brought before the court. The judicial complaint must be limited 'to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'" *Id.* at 545 (citations omitted).

■■■ In this case, Defendant contends that this Court is without jurisdiction to hear this claim because Plaintiffs failed to include a claim for constructive discharge in their EEOC charges. Plaintiffs admit that they did not explicitly raise a constructive discharge claim to the EEOC, but they believe the issue is properly before the court because the EEOC was put on notice of Defendant's discriminatory conduct and its effect on the Plaintiffs.

Although neither party produced the EEOC charge as evidence in this case, it is undisputed that constructive discharge was not specifically raised in the EEOC charge. Therefore, this Court would have jurisdiction over the claim only if constructive discharge would reasonably be expected to grow out of the charge for discriminatory treatment in demotion. However, as the Sixth Circuit has concluded, "At bottom, a demotion and the facts surrounding it are distinct from a constructive discharge and the circumstances supporting it." *Cedar v. Premier Industrial Corp.*, 869 F.2d 1489 (6th Cir.1989), unreported. *See also, Albano v. Schering–Plough Corp.*, 912 F.2d 384 (9th Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Evans v. American Nurses Ass'n.*, 657 F.Supp. 1277 (W.D.Mo. 1987).

There is no evidence in this case to indicate that the investigation concerning demotion broadened into an investigation concerning constructive discharge. Therefore, because the Plaintiffs failed to properly charge constructive discharge in their EEOC complaints, this Court is without jurisdiction to hear the claim.

### CONCLUSION

Pursuant to the foregoing opinion, no genuine issues of material fact remain to be

nation of whether the Plaintiffs were qualified for the position as revised.

litigated and Defendant Toys "R" Us is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is GRANTED and the case is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

### JUDGMENT ENTRY

Pursuant to a Memorandum of Opinion and Order of this Court, Defendant's Motion for Summary Judgment (Document # 18) is GRANTED and this case is hereby DISMISSED WITH PREJUDICE. All costs to Plaintiffs jointly and severally.

IT IS SO ORDERED.