Kenneth R. ISHMAN, Plaintiff,

v.

NATIONAL BIOLOGICAL CORPORATION/ETA SYSTEMS, Defendant.

No. 5:98–CV–2754.

United States District Court,
N.D. Ohio,
Eastern Division.

May 12, 1999.

Kenneth R Ishman, Cleveland, OH, pro se.

David L. Drechsler, Buckingham, Doolittle & Burroughs, Akron, OH, for for National Biological Corporation/Eta Systems, defendant.

## OPINION AND ORDER

GWIN, District Judge.

On April 5, 1999, Defendant National Biological Corporation/ETA Systems filed a motion for summary judgment in this discrimination action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* [Doc 17]. In this opinion, the Court must determine whether genuine issues of material fact exist regarding Plaintiff Kenneth R. Ishman's claim that he was terminated based on his race and religion.

Because the Court finds Plaintiff Ishman has failed to make a *prima facie* case, the Court grants Defendant National Biological's motion.

## I. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) states the procedure for granting summary judgment and says in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *SEC v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp.*, 822 F.2d at 1435.

Essentially factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. *See id.* But not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *60 Ivy Street*, 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

The Court now reviews the facts with these standards in mind.

## II. FACTUAL BACKGROUND

Defendant National Biological terminated Plaintiff Kenneth R. Ishman's employment on June 24, 1998. Ishman claims the termination was wrongful because it was based on race and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

Plaintiff Ishman is an African–American and a member of the African Methodist Episcopal Church. He began employment with National Biological as an Electronic Technician in National Biological's Quality Assurance department on July 15, 1997. Ishman says in late 1997, he filed an internal complaint alleging that Susan Gault, a supervisor in the Production department, referred to him as "Buckwheat." Ishman believes this comment was based on his race. Defendant National Biological states that the comment was a reference to his tendency to mumble and that he sounded like the television character Buckwheat.

In late February 1998, National Biological disciplined Ishman for lifting a female employee, Michele Bator, by the waist and carrying her across the production floor while she repeatedly told him to stop and put her down. Four other employees provided affidavits confirming the unwelcome nature of this incident.

National Biological's president, Howard Dreschler, and vice-president, Mark Friedman, told Ishman the company has a zero tolerance policy for any threats or assaults against co-employees and that he would be terminated if similar behavior occurred again. Dreschler and Friedman suspended Ishman for two days without pay for this incident.

On June 24, 1998, Plaintiff Ishman was involved in another incident with Ms. Bator. Ishman says he drove to work that day through a heavy fog. Upon arriving at National Biological he told another employee, Alex Ives, that the fog reminded him of an Old Testament story. Ishman says Bator asked him to explain what he meant. Ishman explained the story of Passover, in which an angel of death appeared as a fog-like presence and killed the firstborn of Egypt and subsequently the fog led the slaves of Egypt to freedom.

Bator interpreted the conversation differently. Bator reported that Ishman told her she was going to die. A few minutes later, Ishman put his hand in the shape of a gun and pointed it at Bator while making a gunshot sound. Plaintiff Ishman says Bator took his comments out of context and that he never meant to threaten her.

Two witnesses produced affidavits confirming Bator's version of events. Upon learning of the incident, Dreschler and Friedman decided to terminate Plaintiff Ishman.

On July 24, 1998, Ishman filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which declined to pursue the case and issued plaintiff a right-to-sue letter on August 31, 1998.

On November 25, 1998, Plaintiff Ishman filed a *pro se* complaint for discrimination based on race and religion. Ishman claims that Gault's "Buckwheat" comment indicates race was a factor in his termination. He also claims that National Biological and his co-workers misinterpreted his comments about fog and death and that this misunderstanding was based on his religion.

## III. ANALYSIS

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race [or] religion." 42 U.S.C. § 2000e–2(a)(1).

It is not entirely clear whether Plaintiff Ishman is relying on direct or indirect evidence of discrimination to support this action. Under either approach, plaintiff fails to meet his burden at the initial stage.

■ Plaintiff points to Susan Gault's "Buckwheat" comment as being linked to the decision to terminate Ishman's employment. In a direct discrimination or "mixed motive" case, an employee who produces direct evidence of discriminatory animus shifts the burden of production and persuasion to the employer to produce evidence sufficient to show that it would have made the same decision if illegal bias had played no role in the employment decision. *Coleman v. Toys "R" Us, Inc.*, 976 F.Supp. 713, 718 (N.D.Ohio 1997) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

■ Before the burden shifts to the employer, however, the plaintiff must produce sufficient evidence of direct discrimination. But "stray remarks in the workplace, while perhaps probative of [a discriminatory animus], cannot justify requiring the employer to prove that its [employment] decisions were based on legitimate criteria. Nor can statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard.... What is required is ... direct evidence that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching the decision." *Id.* (citing *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775 (O'Connor, J., concurring)).

■ In this case, Susan Gault, a supervisor in another department, made a comment approximately eight months before the June 1998 incident that resulted in Ishman's firing. Ishman did not report to Gault as part of his employment and Ishman does not challenge Defendant National Biological's assertion that Gault did not play a role in the decision to terminate Ishman. Even if she were involved, there is no evidence that a single remark made eight months before the adverse employment action bore any relation to the decisionmaking process at issue.

Further, Plaintiff Ishman makes no allegations of any references to religion by any of defendant's employees. Therefore, Plaintiff Ishman fails to support a case of direct discrimination based on race or religion.

To prevail, Plaintiff Ishman must therefore make the showing described in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The *McDonnell Douglas–Burdine* framework consists of three stages. At the first stage, the plaintiff must establish a *prima facie* case that the employer discriminated against her. To make a *prima facie* case, the plaintiff must show he (1) was a member of a protected class; (2) suffered an adverse action; (3) was qualified for the position; and (4) was replaced by a person outside the protected class or was treated differently from a similarly-situated employee outside the plaintiff's class. *Wine v. Wal–Mart Stores, Inc.*, 1999 WL 191394, *1, 173 F.3d 857 (6th Cir. Mar.19, 1999); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992).

If the plaintiff makes a prima facie case, the defendant is presumed to have violated Title VII. To overcome this presumption, the defendant must articulate a legitimate nondiscriminatory reason for the plaintiff's termination. *Id.* If the defendant can do so, the burden shifts back to the plaintiff to prove pretext, that is, that discrimination was a determinative factor in his termination. *Id.*

■ Plaintiff Ishman is African–American and belongs to the African Methodist Episcopal Church. Thus, with respect to both race and religion, he has established membership in a protected class. Ishman suffered an adverse employment action

when National Biological terminated him on June 24, 1998.

National Biological states, without further explanation, that Ishman was not qualified for the position. In the summary judgment stage, the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Thus, without further explanation regarding how Ishman was unqualified, the Court is not convinced by defendant's argument.

Even assuming Ishman was qualified, plaintiff's claim must fail. Plaintiff Ishman fails to offer sufficient evidence to establish the fourth element of a *prima facie* case. Ishman must show either that he was replaced by a person outside his race or religion or that a similarly-situated person outside his class was treated better.

Plaintiff Ishman has not shown that he was replaced by a person outside his protected class. Therefore, the only way Ishman can prevail is to show he was treated differently from similarly-situated employees outside his race or religion. Plaintiff Ishman fails to do so.

First, Ishman fails to identify any employee as being of a different religion or race from Plaintiff Ishman.

Second, even assuming all of Ishman's co-employees are of another race or religion, Plaintiff Ishman fails to show how that a similarly-situated co-worker was not terminated for substantially the same behavior engaged in by Ishman.

In the disciplinary context, a plaintiff may show he was treated differently from similarly-situated co-workers if "the individuals with whom the plaintiff seeks to compare his/her treatment ... have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Wine*, 1999 WL 191394, at *1, 173 F.3d 857 (quoting *Mitchell*, 964 F.2d at 583).

Analysis under *Mitchell* should not "invite a comparison between the employment status of the plaintiff and other employees in every single aspect of their employment." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998). The inquiry should focus on whether the employment status is "similar in all of the relevant aspects." *Id.* (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)). "Courts should not assume ... that the specific factors discussed in Mitchell are relevant factors in cases arising under different circumstances." *Id.* Courts must make an independent determination of the factors relevant to each case. *Id.*

Plaintiff Ishman has the burden of showing that others who engaged in substantially the same behavior as him were treated differently. Ishman must show that non-protected employees with a similar history of assaulting and/or threatening co-workers were not terminated.

To support his claim that he was treated differently, Ishman points to a June 1998 memo from Susan Gault to Ishman's supervisor, Francis Lamm. In the memo, Gault noted that Ishman failed to follow company policy and procedures in obtaining repair parts. Ishman objects to this memo in the following language:

> Any person who has ever worked in any area of Test, Repair, and Engineering knows that it is absurd to believe a person would pull parts out of a *good* P.C. board to fixed a board in need of repair. Its easier to insert the whole board. The same is true for a finished unit, unless it's needed for test and repair.
>
> *This memo is totally invalid. The absurdity of this memo proves that the plaintiff was scrutinized more closely than other employees were, and that pretext allegations were constantly being derived against him.

Whether it is, in fact, easier to insert a whole P.C. board than it is to pull parts

from a good board for use on another is not at issue in this case. Pointing to the potential illogic of a certain course of conduct is not sufficient to show that others were not written up for engaging in the same conduct as him.

In his complaint to the EEOC, plaintiff states that "White employees, not of the same religion, have made statements relating to religion and they have not been terminated." Ishman does not elaborate on this statement and provides no evidence of any religion-related statements by co-workers.

In Ishman's complaint, he states that National Biological had "heard complaints previously, regarding the biasness and falseness of information contained in internal memos, from previous African–American employees." He also says "[s]everal production personnel have had severe verbal confrontations, and have not been disciplined." [1]

The Court notes that "allegations of a complaint drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a pro se complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." 149 F.3d 1183 (TABLE) 1998 WL 321008, *7 (6th Cir.1998)

(quoting *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991)).

At the summary judgment stage, however, a plaintiff is required to do more than make general assertions. He must produce enough evidence to establish that a genuine issue of material fact exists to proceed to trial.[2] See *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir.1993) ("This court has ruled that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e);") Ishman has failed to offer any evidence admissible under Rule 56 to substantiate the allegations in his complaint to the EEOC or the complaint filed with this Court.

Plaintiff Ishman goes to great lengths to point out the alleged fraudulent nature of Defendant National Biological's investigation of the incident leading to his termination and of alleged inconsistencies among witness statements and disciplinary memos in his employment file.[3] Without determining the strength of these arguments, the Court notes that an inquiry into the nature or credibility of a defendant's proffered reason for terminating an employee does not occur until the third, or pretext, stage of analysis under the *McDonnell Douglas–Burdine* framework.

In the instant case, Plaintiff Ishman fails at the first stage of analysis. Ishman fails

---

1. Plaintiff Ishman identifies these individuals as: "Jerry T. vs. Steve P.—Jerry T. vs. Russell S., Russell S. vs. Brian W.—Joe vs. (Jerry & Steve P & Russell S)." As explained further in the text, Ishman has not provided the Court with any admissible evidence to substantiate his allegations.

2. Fed.R.Civ.P. 56 provides, in part:
   (c) Motion and Proceedings Thereon.... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....
   (e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal

knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein....

3. For example, plaintiff Ishman states that Defendant National Biological failed to fully investigate the "fog" incident because it did not interview Alex Ives, a witness to the exchange between Ishman and Ms. Bator. In its reply memorandum, National Biological provides an affidavit from Mr. Ives, who states that though he was in the vicinity of Ishman and Bator, he neither witnessed nor heard the exchange. He also stated he does not recall his conversation with Ishman about the Bible, which preceded the incident with Bator.

to offer evidence of a single employee of a different race or religion who engaged in similar threatening conduct and was treated differently from him.

Because Ishman fails to make a prima facie case of discrimination based on either race or religion, the Court grants Defendant National Biological's motion.

## IV. CONCLUSION

For the reasons explained herein, the Court grants Defendant National Biological Corporation's motion for summary judgment.

IT IS SO ORDERED.